UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**CAPTION IN COMPLIANCE WITH D.N.J. LBR 9004-2(C)**

**THE LAW OFFICE OF EDWARD HANRATTY**
EDWARD HANRATTY, ESQ. (052151997)
57 WEST MAIN STREET, SUITE 2D
FREEHOLD, NJ 07728
TEL:(732)866-6655

| | |
|---|---|
| IN RE:<br><br>**MIYA B. BUSH AKA MIYA GOODMAN** | CASE NO.: 25-8130<br>HEARING DATE:<br>JUDGE:<br>AP DOCKET NO.: |

MIYA B. BUSH AKA MIYA GOODMAN

**PLAINTIFF(S)**

-AGAINST-

UNLOCK PARTNERSHIP SOLUTIONS AOI, INC.;
AND CLEAR EDGE TITLE, INC.

**DEFENDANT(S)**

## ADVERSARY PROCEEDING COMPLAINT

Plaintiff, Miya B. Bush *aka* Miya Goodman ("Plaintiff"), by counsel, Edward Hanratty, Esq.

brings this complaint against Unlock Partnership Solutions AOI, Inc. ("Unlock"); ABC Inc. 1-

10, and John Doe 1-10; collectively as ("Defendants"), hereby states as follows:

## PRELIMINARY STATEMENT

Unlock Partnership Solutions AOI ("Unlock") is a Delaware corporation operating and at the

times relevant to the complaint, operated in New Jersey with a registered office in Marlton, New

Jersey. It offers New Jersey homeowners, it says, a financial product that provides a homeowners

the ability to "unlock" the monetary value of the equity in their homes, turning it into ready cash,

by the simple expedient of accepting cash from Unlock today in return for a predetermined share of the proceeds for the sale of the home not more than 10 years in the future.

The marketing of the product is deceptive. Unlock describes itself as "Unlock is an innovative consumer finance company on a mission to help homeowners unlock the value of their biggest asset, their home equity, and to dramatically improve their lives by doing so. " https://www.unlock.com/app/uploads/product-guide-260227.pdf.  It explains "We offer an innovative home finance solution, called a Home Equity Agreement (HEA). When your Unlock HEA closes, you'll receive a lump-sum cash payment.* You can use the money for up to 10 years without interest charges or monthly payments. In exchange for the cash, Unlock will receive a percentage of your home's value when you decide to sell or buy us out. The more cash we give you up front, the larger our future share will be. We're hoping that your home will rise in value and we'll both benefit from price appreciation. It's that simple." https://www.unlock.com/app/uploads/product-guide-260227.pdf.

Unlock explains to consumers that it will provide them with cash based on the equity the homeowner has in their residence. That's the agreed value of the home, less any mortgages or other liens.  In order to enter into an Unlock agreement, the homeowner must have at least 40% equity in their home ("You should have at least 40% equity in the property. Your home equity is the difference between the market value of your property and any outstanding loans you have on the property. " https://www.unlock.com/blog/home-equity-101/how-do-i-qualify-for-an-unlock-home-equity-agreement-hea/).

In an ideal scenario, for Unlock, the agreement runs its course over 10 years, and the property is sold.  Unlock then is to receive its proceeds.

2

What Unlock is less clear about is that the calculation of the proceeds due to Unlock to repay the obligation is not based on the equity in the property, it is based on the full fair market value of the property, without any consideration of any superior liens.

Unlock, in its "product guide", provides consumers with an explanation of the calculation for what is due Unlock at the termination of the agreement. It provides the sample transaction:

• Your home's value at the start is $1,000,000, and Unlock provides you with $100,000, less certain disclosed fees and costs, in exchange for 20% of your home's future value.

• You decide to sell your home 10 years later, and it has increased in value by 20%, to $1,200,000.

When your sale closes, the payment to Unlock is $240,000, calculated simply as Unlock's percentage of the home's value at the time the HEA ends. $1,200,000 X 20% = $240,000.

See https://www.unlock.com/app/uploads/product-guide-260227.pdf.

Under this calculation, even if the value of the home decreases, Unlock will still receive money.

However, in section 10 of the actual executed agreement, Unlock provides a different repayment calculation:

$$Annualized\ Cost =$$
$$(Unlock\ Share\ /\ Investment\ Payment)\ \wedge\ (365\ /\ Term\ Days) - 1$$
$$Maximum\ Unlock\ Share =$$
$$Investment\ Payment\ X\ (1 + Annualized\ Cost\ Limit)\ \wedge\ (Term\ Days\ /\ 365)$$

Under this formulation, the "Maximum Unlock Share" is the determining factor for what is owed.  Under this formulation, as of 4/6/2-26, plaintiff would owe

**Inputs:**

- Investment: **$52,783**

- Annual cost limit: **20.9% (0.209)**

- Time: **892 days = 2.44 years**

**Maximum Unlock Share formula:**

$$52,783 \times (1.209)^{2.44}$$

$$(1.209)^{2.44} \approx 1.59$$

$$52,783 \times 1.59 \approx 83,900$$

As of 4/6/2026, plaintiff is obligated to pay $83,900.00 to Unlock.

Of the two calculations use by Unlock to determine the amount due at the end of the agreement, neither uses the "equity" in the home as the basis for calculating repayment. The first uses the gross value a t the time of settlement, the second uses the original amount lent and calculates the amount due using the number of days outstanding and a predetermined percentage.

According to the executed Unlock agreement:

> The Maximum Unlock Share is the greatest amount the Unlock Share can be when determining the Settlement Payment or Partial Settlement Payment. If the Annualized Cost exceeds the Annualized Cost Limit, the Unlock Share will be set equal to the Maximum Unlock Share when calculating the Settlement Payment or Partial Settlement Payment.

What this clause expresses is that the "Maximum Unlock Share", calculated using the amount borrowed, predetermined rate of return and time outstanding, is the cap on the amount due Unlock.

So, the Unlock Share is the value of the value of the home due Unlock at the time of settlement. The Maximum Unlock Share is the greatest amount of money the Unlock Share can

4

ever be and is based on the amount provided to the borrower, the time until repayment, and a predetermined interest rate. Then there is an alternative calculation, based on the gross value of the home on the date of settlement. Neither of the repayment options is based on the owners' equity (defined as fair market value, less any superior liens) in the home.

Residential real estate values in New Jersey have experienced significant growth, particularly from 2020 onward, with the median sales price of single-family homes increasing by roughly 53% in the five years preceding 2024. Based on New Jersey Realtors data, the median home price in the state was approximately $560,000 in 2024, up from $337,000 in 2019. (https://www.nj.com/realestate-news/2024/02/the-median-sales-price-of-a-home-in-nj-is-up-almost-53-from-5-years-ago.html#:~:text=If%20buying%20a%20home%20in,%25%20($59%2C000)%20to%20$513%2C000.)

The product is a disguised loan, marketed as an "equity investment" that actually results in a recorded mortgage on the real property and an obligation to repay a readily ascertained amount. The calculation of that amount is disguised by the repeated references to "equity" being the basis for all calculations, which is commonly understood as the value of collateral less any superior liens, while in fact only the mount lent is based on equity, the amount due to Unlock is actually calculated based on the fair market value, the gross value, of the home or on the amount lent. The product is designed such that even if the home loses value, Unlock will still profit on its capital outlay. This is not a financial product that creates a "partnership" where partners share equally in the risk of loss. This is an extension of credit disguised as a purchase of an interest in the future value of the property, where the property is collateral, and Unlock has enhanced its

5

likelihood of being repaid by basing the amount lent on the available equity. Just like a regular mortgage is based on the unencumbered value of any collateral.

The New Jersey legislature, in its "Findings, declarations relative to abusive lending practices." N.J.S.A. § 46:10B-23(2)(a), has stated: "Abusive mortgage lending has become an increasing problem in this State, exacerbating the loss of equity in homes and causing an increase in the number of foreclosures in recent years. One of the most common forms of abusive lending is the making of loans that are equity-based, rather than income-based." Id. (emphasis added). Additionally, the legislature found "Abusive lending has threatened the viability of many communities and caused decreases in home ownership. While the marketplace appears to operate effectively for conventional mortgages, too many homeowners find themselves victims of overreaching lenders who provide loans with unnecessarily high costs and terms that are unnecessary to secure repayment of the loan." Id. Further, the legislature determined that free market competition was not effective in restricting these practices. "As competition and self-regulation have not eliminated the abusive terms from loans secured by a consumer's home, the consumer protection provisions of this act are necessary to encourage lending at reasonable rates with reasonable terms." Id.

Miya Bush is a married woman, presently separated and maintaining a separate household, who owns a home in Mercer County, New Jersey. She resides there with her husband. In 2023, she entered into an agreement (**EXHIBIT A**) with Unlock Partnership AOI ("Unlock"), which she understood to be a loan whereby she obtained cash from Unlock in return for payment from the proceeds of the sale of her home in the future. To secure its interest, Unlock recorded the agreement as a mortgage in the county clerk's office of Mercer County, New Jersey. (**EXHIBIT A**).

Unfortunately, the documents, drafted by Unlock and not subject to any negotiation, describe a different transaction.  In the transaction described in the documents, in return for providing $52,783.00, less an origination fee to Unlock of $2,586.37 and an appraisal fee of $515.00, as well as other costs, in cash to Ms. Bush, which was 8.6%  of the gross value of the property on the closing date, Unlock obtained a 18.48% interest in the gross value of the property which would be determined on the day Bush either repaid Unlock, or the property was sold so Unlock could be paid the amount due.   At the time of both of the above transactions, Ms. Bush's home was subject to a first mortgage of roughly $429,389.00. As of March 27, 2026, Bush owes Unlock $83,186.00, were the agreement to be enforced.

The description of the Unlock product and its actual performance contains a subtle anomaly that generates incredible returns for Unlock. Unlock bases the amount it will lend based on the presently available equity- commonly defined as the appraised value of the property less any liens. Unlock then claims for itself a share based on the gross value, not adjusting for any other liens. That makes the use of the term equity investment misleading because the return to Unlock is not based completely on appreciation or growth in the homeowner's equity interest in the property. It is based on the value of the property on the date the Unlock agreement concludes. Unlock does not explain that by requiring homeowners to have at least 40% equity in the home, Unlock has built in its profit the moment the documents are executed.

**PARTIES**

1.      At all relevant times, Plaintiff Miya B. Bush *aka* Miya Goodman ("Plaintiff") was the owner of and resident in real property located in Ewing, New Jersey.

7

2. Upon information and belief, Defendant, Unlock Partnership Solutions AOI Inc., is a Delaware corporation located at 548 Market St., Suite 31036, San Francisco, CA, 94104. It maintains a local office in Branchburg, New Jersey.

3. Upon information and belief, Defendant, Clear Edge Title Inc., is a Florida corporation located at 2605 Enterprise Road East, Suite 270, Clearwater, Florida 33750.

4. John Does 1-10 and ABC Inc. 1-10 are fictitious persons or entities that discovery may reveal as having liability in this matter.

## JURISDICTION AND VENUE

5. At all relevant times, the underlying events occurred in the District of New Jersey. They affected title and/or an interest in real property located in the District of New Jersey.

6. Miya B. Bush aka Miya Goodman is presently a debtor in a pending Chapter 13 case in this court bearing case number 25-21830-MEH.

7. The matter is a core matter as it is, in part, a proceeding to determine the validity, priority, or extent of a lien or other interest in property pursuant to F.R.B.P. 7001(b) and a proceeding to obtain a declaratory judgment related to any proceeding described in (a)–(h) of F.R.B.P. 7001(b), as required by F.R.B.P. 7001(i).

8. Plaintiff consents to the entry of judgment on all matters herein by the bankruptcy judge.

## FACTS

9. Miya Bush is a married woman, presently separated and maintaining a separate household, who owns a home located in Ewing, New Jersey.

8

10. On or about November 03, 2023, needing cash for household expenses after a failed business venture, Plaintiff entered into an agreement with Unlock Partnership Solutions AOI Inc.

11. That agreement required Unlock Partnership Solutions AOI Inc. to immediately pay $52,785.00, less an origination fee and other charges, to the plaintiff.

12. In return for the payment to the plaintiff, the agreement required the plaintiff to grant to Unlock Partnership Solutions AOI Inc. a security interest in the real property, leases, and rents derived therefrom, insurance proceeds derived therefrom, condemnation awards derived therefrom, easements, and rights of way derived therefrom, additional land acquired by plaintiff for use in connection with the subject property, all fixtures and personal property related to the present or future use or occupancy of the property and all other rights of plaintiff in and to the items listed above.

13. The document secured the obligation of the plaintiff to make the "settlement payment" (a term defined in a separate document identified as the "Exchange Agreement"); and satisfy a litany of other obligations contained in the agreement (in addition to those listed at #12 above).

14. The agreement assigns all leases and rents to Unlock Partnership Solutions AOI Inc., not as additional security, but permits Unlock Partnership Solutions AOI Inc., in the event of any default under the agreement, to enter and take possession of the property and any rents.

15. Plaintiff agreed to pay all taxes as they came due, and name Unlock Partnership Solutions AOI Inc. on any insurance policy relating to the property and to pay any sums required to maintain the property.

16. Plaintiff agreed to pay all taxes, filing, registration, or recording fees, and all expenses incident to the preparation, execution, and acknowledgement and/or recording of the transaction documents.

17. The agreement asserts that Unlock Partnership Solutions AOI Inc. shall have a lien on plaintiff's entire interest in the property, notwithstanding that the Exchange Agreement asserts only a right to a fractional interest.

18. In the Exchange Agreement, which is incorporated into the recorded security agreement in full by reference, explains that Unlock Partnership Solutions AOI Inc. has paid to the plaintiff $52,785.00.  In return for that one-time payment, Unlock Partnership Solutions AOI Inc. is entitled to an interest in the real property, although, according to the document, not an ownership interest, which is valued according to a complex formula based on the future appreciation of the home.  The agreement terminates after 10 years, at which point Unlock Partnership Solutions AOI Inc. must be paid the amount due it under the agreement.

19. The most recent agreement calls for Unlock Partnership Solutions AOI Inc. to receive roughly 18.48 % of the gross value of the home from any sale of the property, irrespective of any superior liens.

20. At the time of the agreement, Unlock Partnership Solutions AOI Inc. valued the property at $ 614,000.00.

21. At the time of the agreements, the property was subject to a first mortgage of approximately $429,389.00.

22. Under the calculations in the agreements, Unlock Partnership Solutions AOI Inc. is to receive 18.48% of the property value (calculated as ending home value less any maintenance adjustments, but not adjusted for any senior liens) multiplied by the duration of the term of the transaction.  In the roughly two years since the initial transaction, Unlock Partnership Solutions AOI Inc. has acquired a roughly $ 83,186.00 interest in the subject property.

23. The agreement contains a penalty clause that, upon certain default events, permits Unlock Partnership Solutions AOI Inc. to add 10% to any amount due, at its sole discretion.

24. At section 17.2 of the exchange agreement, the agreement permits Unlock Partnership Solutions AOI Inc. to declare a default and convert its rights under the agreement to a title owner interest, and sell the property.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violation Of The New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 ET. SEQ)

25. Plaintiffs incorporate by reference each allegation set forth above as is set forth at length herein.

26. Federal and state laws protect homeowners from complex and confusing mortgage products like Unlock's that threaten to take people's homes.

27. Congress and the New Jersey legislature have both passed laws to protect homeowners like the Bush's from complex and confusing financial products that can cause people to lose their homes.

11

28.    While the federal Truth in Lending Act protects all borrowers, residential mortgages have special protections. Congress passed these protections to "assure that consumers are offered and receive residential mortgage loans on terms that reasonably reflect their ability to repay the loans and that are understandable and not unfair, deceptive or abusive." 15 U.S.C. § 1639b(a)(2).

29.    For example, mortgage lenders must ensure that homeowners have the ability to repay the loan. Id. § 1639c(a)(1).

30.    Companies originating mortgages must also be licensed under applicable federal and state laws. Id. § 1639b(b)(1)(A).

31.    Congress also sought to ensure that homeowners can vindicate these and other rights in court by prohibiting mandatory arbitration clauses in any "residential mortgage loan." Id. § 1639c(e)(1).

32.    In addition to these protections for residential mortgage loans generally, TILA includes even further protections for "high-cost mortgage[s]." Id. § 1602(bb).

33.    These include pre-loan counseling and additional disclosures. Id. § 1639(a), (h), (u).

34.    New Jersey law provides additional protections for homeowners.

35.    New Jersey requires disclosures and protections for mortgages generally, see generally N.J.S.A. § 17:11C-75, as well as special requirements for high-cost mortgages, see N.J.S.A. § 46:10B-26.

36.    A lender cannot charge more than 6% interest if the rate is not specified in the contract. N.J.S.A. § 31:1-1(a); N.J.A.C § 3:1-1.1.

37.    New Jersey also requires that only licensed mortgage lenders can offer mortgages to homeowners. N.J.S.A. § 46:10B-18.

12

38.   The defendants violated the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 et. seq.), which prohibits deceptive practices, fraud, misrepresentation, or knowing omission of material facts in the sale or advertisement of merchandise and real estate, and also engaged in an unconscionable commercial practice, all of which caused plaintiff to suffer an ascertainable loss of money or property by violating the above statutes and regulations, as well as by making knowing misrepresentations and/or material omissions which caused plaintiff to suffer an ascertainable loss and actual damages.

**WHEREFORE**, plaintiff demands an award of damages, costs and attorney fees as well as such relief as is equitable and just.

<div align="center">

**SECOND CLAIM FOR RELIEF**
**New Jersey Home Ownership Security Act of 2002 (N.J.S.A. 46:10B-22 et. seq.)**

</div>

39.   The plaintiff incorporates by reference each allegation set forth above as if set forth at length herein.

40.   The transaction here is subject to the New Jersey Home Ownership Security Act of 2002, N.J.S.A. § 46:10B-22 et. seq.

41.   The transaction at issue is a home loan. Unlock extended credit to Ms. Bush. The statute defines a "home loan" as an extension of credit primarily for personal, family or household purposes, including an open-end credit plan in which the loan is secured by a mortgage or deed of trust on real estate in this State upon which there is located or there is to be located a one to six family dwelling which is or will be occupied by a borrower as the borrower's principal dwelling.

42.   Unlock is a creditor of the plaintiff. The statute defines "creditor" as a person who extends consumer credit that is subject to a finance charge and to whom the

13

obligation is payable at any time. This obligation was to be paid within a set time under all reasonably foreseeable conditions.

43. The loan is secured by a mortgage on real estate in this State on which there is located a dwelling which is occupied by the borrower as the borrower's principal dwelling.

44. The transaction at issue also meets the definition of an equitable mortgage under New Jersey law. An equitable mortgage is created where courts have stated, "If a transaction resolves itself into a security, whatever may be its form and whatever name the parties may choose to give it, it is, in equity, a mortgage. If a deed or contract, lacking the characteristics of a common law mortgage, is used for the purpose of pledging real property, or some interest therein, as security for a debt or obligation, and with the intention that it shall have effect as a mortgage, equity will give effect to the intention of the parties. Such is an equitable mortgage. Cummings v. Jackson, 55 N.J. Eq.805, 809; Peugh v. Davis, 96 U.S. 332, 24 L.Ed.775 (1877). The Unlock agreement provides that the owner grants to Unlock, as mortgagee, a security interest in the land and all improvements. In exchange for that security interest, Unlock, as mortgagor, paid to the plaintiff an agreed sum of money.

45. Unlock's product violates the statute by purporting to charge a fee for payoff information, including but not limited to charging a fee for processing a permitted sale or owner buyout.

46. Unlock's product is a high-cost home loan as defined in the statute due to its high fees and high interest rate. N.J.S.A. § 46:10B-24. Unlock failed to comply with the high-cost mortgage requirements of N.J.S.A. § 46:10B-26, including but not limited to

14

failing to provide mandated notices to the borrower, charging fees in excess of those permitted by the statute, and requiring arbitration.

**WHEREFORE**, plaintiff demands an award of damages, costs, and attorney fees as well as such relief as is equitable and just.

### THIRD CLAIM FOR RELIEF
### Declaratory Judgment Voiding The Agreement

47. The plaintiff incorporates by reference each allegation set forth above as if set forth at length herein.

48. The New Jersey Declaratory Judgment Act (N.J.S.A. 2A:16-50 to 62) allows courts to declare legal rights, duties, or status, resolving uncertainties regarding contracts, statutes, or insurance coverage before a formal breach occurs. It provides Binding, proactive relief, not just advice, to clarify disputes.

49. For centuries, it has been the rule that a mortgagor's equity of redemption cannot be clogged and that he cannot, as a part of the original mortgage transaction, cut off or surrender his right to redeem. Any agreement which does so is void and unenforceable as against public policy.

50. The instant agreement waives the homeowner's equity of redemption. Upon a default by the homeowner, Unlock has the right to convert its interest to title ownership.

51. If the instrument, as the instrument here, is in its essence a mortgage, the parties cannot by any stipulations, however express and positive, render it anything but a mortgage, or deprive it of the essential attributes belonging to a mortgage in equity.

52. A key component of a mortgage is the mortgagor's equity of redemption. The equity of redemption is a borrower's (mortgagor's) legal right to redeem their property after defaulting on a loan by paying the full outstanding debt, interest, and costs, thereby

15

stopping foreclosure. This equitable right exists from the time of default until the final

foreclosure sale is completed.

53. Under the agreement, there is no foreclosure upon default; there is no process. Unlock

simply seizes the property upon default.

54. The agreement is not enforceable, and the recorded lien is invalid.

**WHEREFORE**, plaintiff demands an award of damages, costs, and attorney fees as well as such

relief as is equitable and just.

## FOURTH CLAIM FOR RELIEF
### Quiet Title

55. The plaintiff incorporates by reference each allegation set forth above as if set forth at

length herein.

56. The agreement and resulting lien are not enforceable, and to the extent title is

clouded, it should be quieted.

**WHEREFORE**, plaintiff demands an award of damages, costs, and attorney fees as well as such

relief as is equitable and just.

## FIFTH CLAIM FOR RELIEF
### Violation of The New Jersey Truth in Consumer Contract, Warranty, and Notice Act

57. The plaintiff incorporates by reference each allegation set forth above as if set forth at

length herein.

58. The New Jersey Truth in Consumer Contract Notice and Warranty Act (N.J.S.A.

56:12-14) forbids any seller, lessor, creditor, lender or bailee in the course of his

business from offering to any consumer or prospective consumer or enter into any

written consumer contract or give or display any written consumer warranty, notice or

16

sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed.

59.    The contract offered by Unlock, a seller or lender, to Bush, a consumer, violated applicable law in violation of the statute.

**WHEREFORE**, plaintiff demands an award of damages, costs, and attorney fees as well as such relief as is equitable and just.

### SIXTH CLAIM FOR RELIEF
### Violation of the New Jersey Plain Language Act

60.    The plaintiff incorporates by reference each allegation set forth above as if set forth at length herein.

61.    The statute requires that a consumer contract entered into on or after the effective date of this amendatory and supplementary act shall be written in a simple, clear, understandable, and easily readable way.

62.     In determining whether a consumer contract has been written in a simple, clear, understandable, and easily readable way as a whole, a court is instructed by the statute to take into consideration the guidelines outlined in section 10 of the act.

63.    The statute, in section 10, provides the following guidelines for prohibited practices in consumer contracts:

(1) Cross references that are confusing;

(2) Sentences that are of greater length than necessary;

(3) Sentences that contain double negatives and exceptions to exceptions;

(4) Sentences and sections that are in a confusing or illogical order;

17

(5) The use of words with obsolete meanings or words that differ in their legal meaning from their common ordinary meaning.

64. These and other violations caused the plaintiff to suffer damages.

**WHEREFORE**, plaintiff demands an award of damages, costs, and attorney fees as well as such relief as is equitable and just.

<div align="center">

**SEVENTH CLAIM FOR RELIEF**
**Violation of "New Jersey Consumer Finance Licensing Act, N.J.S.A. 17:11C-1 et. seq.**

</div>

65. The plaintiff incorporates by reference each allegation set forth above as if set forth at length herein.

66. The statute imposes requirements on businesses that lend to consumers in amounts of $50,000.00 or less, wherever the loan is not secured by an interest in real estate that the lender be licensed by the state to make such loans, limits the interest rates on such loans, prohibits charges other than interest and other requirements.

67. The loan at issue was for less than $50,000.00. After deducting impossible fees and charges the purported amount lent is less than $50,000.00.

68. The loan at issue is an agreement for Bush to repurchase the interest in the future value of her home, as determined by a pre-determined formula, and not an interest in real estate. An agreement to repurchase property sold is considered a loan under the statute, and any increase in the price is considered interest.

69. Anyone who should be licensed but is not is also subject to the strictures of the act.

70. Failure to comply with the act renders the contract void, and the lender is prohibited from collecting any principal, interest, or other charge or fee in connection with the loan.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Mrs. Bush hereby demands trial by

jury as to all issues in the above matter.

Respectfully submitted,

*/s/ Edward Hanratty*
EDWARD HANRATTY, ESQ.
LAW OFFICE OF EDWARD HANRATTY
57 W. Main Street, Suite 2D
Freehold, NJ 07728
(732) 866-6655
*thanratty@centralnewjerseybankruptcylawyer.com*

Dated: April 2, 2026                    Counsel for Plaintiff

## DESIGNATION OF TRIAL COUNSEL

Pursuant to the Rules Governing the Courts of the State of New Jersey, the undersigned is

hereby designated as trial counsel.

Respectfully submitted,

*/s/ Edward Hanratty*
Dated: April 2, 2026                    EDWARD HANRATTY, ESQ.

## CERTIFICATION

I hereby certify, pursuant to Rule 4:5-1, that to my knowledge this matter is not subject to

any other action. No other action is being contemplated and no other party should be joined in

this action at this time.

Respectfully submitted,

*/s/ Edward Hanratty*
Dated: April 2, 2026                    EDWARD HANRATTY, ESQ.

## NOTICE TO ATTORNEY GENERAL OF ACTION

19

A copy of the Complaint will be mailed to the Attorney General of the State of New Jersey

within ten days after filing with the Court, pursuant to N.J.S.A. § 56:8-20.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Edward Hanratty*
EDWARD HANRATTY, ESQ.
LAW OFFICE OF EDWARD HANRATTY
57 W. Main Street, Suite 2D
Freehold, NJ 07728
(732) 866-6655
*thanratty@centralnewjerseybankruptcylawyer.com*

</div>

Dated: April 6, 2026                    Counsel for Plaintiff